AMINOIL U. S. A., INC., a Delaware corporation, and the Signal Bolsa Corporation, a California corporation, Petitioners-Appellants,

v.

CALIFORNIA STATE WATER
RESOURCES CONTROL
BOARD, Respondent.

Amigos de Bolsa Chica, Inc., Real
Party In Interest,

Ann McGill Gorsuch,* Administrator,
Environmental Protection Agency,
Real Party In Interest-Appellee.

No. 80–5516.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 1981.

Decided April 2, 1982.

---

* We substitute Ann McGill Gorsuch, Administrator of the Environmental Protection Agency, as successor to the original appellee Douglas M. Costle, the former Administrator, pursuant to Fed.R.App.P. 43.

Victor J. Gold, Frederick A. Fudacz, Nossaman, Krueger & Marsh, Los Angeles, Cal., for petitioners-appellants.

Martin W. Matzen, Dept. of Justice, Washington, D. C., argued, for real party in interest-appellee; Andrea Sheridan Ordin, U. S. Atty., Los Angeles, Cal., Anne S. Almy, Dept. of Justice, Washington, D. C., on brief.

Before WALLACE and ANDERSON, Circuit Judges, and JAMESON,** District Judge.

WALLACE, Circuit Judge:

This case presents a troublesome jurisdictional issue arising in the wake of our decision in *Shell Oil Co. v. Train*, 585 F.2d 408 (9th Cir. 1978) (*Shell*). Aminoil U.S.A., Inc. (Aminoil) appeals from the district court's order dismissing its action against Gorsuch, Administrator of the Environmental Pro-

** Honorable William J. Jameson, United States District Judge, District of Montana, sitting by designation.

tection Agency (EPA or the Administrator), for lack of jurisdiction. The suit was originally filed in California state court for review of an order of the California State Water Resources Control Board (State Board). When Aminoil joined the Administrator as a real party in interest, the Administrator removed the case to the district court pursuant to 28 U.S.C. § 1442(a)(1). Because we conclude that the state court, and therefore the district court on removal, lacked jurisdiction to join the Administrator as a party, we affirm.

I

### A. The Statutory Framework.

In 1972 Congress enacted amendments to the Federal Water Pollution Control Act which are now generally referred to as the Clean Water Act (Act). Pub.L. No. 92–500, 86 Stat. 816, codified at 33 U.S.C. §§ 1251–1376. The purpose of these amendments is to eliminate pollutant discharges into the navigable waters of the United States by 1985. Act § 101(a)(1), 33 U.S.C. § 1251(a)(1). Section 402 of the Act creates the National Pollutant Discharge Elimination System (NPDES), which regulates the discharge of pollutants into navigable waters under the authority of the EPA. 33 U.S.C. § 1342. It is unlawful for any person to discharge a pollutant without first obtaining a NPDES permit and complying with its terms. Act § 301(a), 33 U.S.C. § 1311(a). Navigable waters have been administratively defined to include "wetlands" pursuant to regulations promulgated by the Army Corps of Engineers, 33 C.F.R. § 323.2, and the EPA, 40 C.F.R. § 122.3.

The Act is a "complicated and lengthy statute." American Frozen Food Inst. v. Train, 539 F.2d 107, 113 (D.C.Cir.1976). Its allocation of concurrent enforcement authority to both state and federal agencies creates a "cooperative federal-state scheme for the control of water pollution," Shell,

supra, 585 F.2d at 409, and a "delicate partnership" between state and federal agencies. Save The Bay, Inc. v. Administrator of the EPA, 556 F.2d 1282, 1284 (5th Cir. 1977). The Act empowers the Administrator to issue discharge permits regulating the nature and quantity of the various pollutants which may lawfully be discharged. Act § 402(a), 33 U.S.C. § 1342(a). Yet in order "to recognize, preserve, and protect the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution," Act § 101(b), 33 U.S.C. § 1251(b), the Act provides that each state may establish and administer its own permit program covering pollutant discharges into navigable waters within its jurisdiction. Act § 402(b), 33 U.S.C. § 1342(b). The Administrator must approve a proposed state permit program unless he determines that the program does not provide "adequate authority" to enforce the Act. Id. Once a state program is approved, the Act requires that the EPA suspend its own issuance of permits. Act § 402(c)(1), 33 U.S.C. § 1342(c)(1). California has adopted a plan for the issuance of NPDES permits, see Cal. Water Code § 13370 et seq., which has been approved by the EPA. 39 Fed. Reg. 26,061 (1973). The State Board and its nine subsidiary regional boards, therefore, "have primary responsibility for the enforcement of the [Act] and the effluent limitations established pursuant to it in California." Shell, supra, 585 F.2d at 410.

The EPA, however, retains independent supervisory authority over approved state programs. It may withdraw its approval of a state program if it determines that the state program is not being administered in accordance with the requirements of the Act, § 402(c)(3), 33 U.S.C. § 1342(c)(3), and the Administrator may veto any state discharge permit which he deems to be "outside the guidelines and requirements of [the Act]." Act § 402(d)(2), 33 U.S.C. § 1342(d)(2).[1] Under sections 309(a)(1) and

---

1. The states are required to transmit a copy of any permit application to the Administrator. Act § 402(d)(1), 33 U.S.C. § 1342(d)(1). The Administrator may waive this notification requirement, id. § 402(e), 33 U.S.C. § 1342(e),

and may also waive his authority to veto any particular state-issued permit. Id. § 402(d)(3), 33 U.S.C. § 1342(d)(3). He has done neither in this case.

(a)(3) of the Act, 33 U.S.C. § 1319(a)(1), (a)(3), the EPA is empowered to notify violators and states that if the state has not commenced appropriate enforcement action within 30 days, the EPA will issue a compliance order or bring a civil action to enforce compliance. Section 309(b), 33 U.S.C. § 1319(b), authorizes the Administrator to commence a civil enforcement action against individual violators and recalcitrant state agencies in federal district court.[2]

Despite this residual federal supervisory responsibility, the scheme of cooperative federalism established by the Act remains "a system for the mandatory approval of a conforming State program and the consequent suspension of the federal program [which] creates a separate and independent State authority to administer the NPDES pollution controls...." *Mianus River Preservation Comm. v. Administrator, EPA,* 541 F.2d 899, 905 (2d Cir. 1976). The role envisioned for the states encompasses both the opportunity to assume primary responsibility for the implementation and enforcement of federal effluent discharge limitations, Act § 402(b), 33 U.S.C. § 1342(b), and the right to enact discharge limitations which are more stringent than the federal standards, Act § 510, 33 U.S.C. § 1370. Thus, although the Act gave the EPA the authority in the first instance to issue NPDES discharge permits, Act § 402(a)(1), 33 U.S.C. § 1342(a)(1), "Congress clearly intended that the states would eventually assume the major role in the operation of the NPDES program." *Shell, supra,* 585 F.2d at 410.

B. *The Factual Background.*

Aminoil operates oil and gas wells at a site in Orange County, California, leased from appellant Signal Bolsa Corporation. These operations produce drilling wastes which are presently discharged into the surrounding environment. The proper characterization of these surrounding waters is the basis of the instant dispute. In July 1978, the Fish and Wildlife Service of the

United States Department of the Interior requested that the Santa Ana Region of the State Board (Regional Board) adopt an order declaring Aminoil's disposal site a "wetlands" subject to the jurisdiction of the Act and its companion California statute, Cal. Water Code § 13370 *et seq.* Following a meeting at the site between Aminoil, the EPA and the Regional Board, and after a public hearing, the Regional Board concluded that the area "cannot be defined as national wetlands. Therefore, an NPDES permit is not necessary."

The Amigos de Bolsa Chica (Amigos), an interested environmental group, petitioned the State Board for review of the Regional Board's decision pursuant to Cal.Water Code § 13320. Aminoil intervened in this proceeding. On July 13, 1979, while the Amigos' petition was pending, the EPA sent Aminoil a "finding of violation" pursuant to section 309(a)(1) of the Act, 33 U.S.C. § 1319(a)(1), indicating that Aminoil's discharges into wetlands without a NPDES permit were in violation of section 301 of the Act, 33 U.S.C. § 1311(a). In accordance with section 309(a)(1), the EPA notified Aminoil and the State Board that it would take "appropriate action" if the State Board had not commenced enforcement action within 30 days.

Two months later, the State Board mailed to the EPA a copy of a proposed order reversing the decision of the Regional Board and finding the property to be a "wetlands" subject to the jurisdiction of the Act. This proposed order was based upon the same record that was before the Regional Board; no additional evidentiary hearing was conducted. In a letter dated September 17, 1979, the EPA urged the State Board to adopt the proposed order without substantive change. Three days later, the State Board adopted the order.

On October 24, 1979, Aminoil filed an action in California superior court seeking review of the State Board's finding on the wetlands issue pursuant to Cal.Water Code

---

**2.** Section 402(i) of the Act, 33 U.S.C. § 1342(i), provides that "nothing in this section shall be construed to limit the authority of the Adminis-

trator to take action pursuant to section 309 of this Act."

§ 13330 and Cal.Civ.Proc. Code § 1094.5 (mandamus). It named as real parties in interest the Amigos and the Administrator. On November 20, 1979, the Administrator removed the action to the district court pursuant to 28 U.S.C. § 1442(a)(1), which permits officers of United States agencies, when acting under color of such office, to remove civil actions commenced against them in state court to the federal district court. Subsequently, the Administrator filed a motion to dismiss, asserting that neither the state court, nor the district court upon removal, had jurisdiction to entertain the action against him, and that sovereign immunity barred the suit. The district court granted the motion. Relying on our decision in *Shell*, the court held:

> *Shell* cannot logically be interpreted as giving a state court jurisdiction over a federal agency in a dispute over federal law when such jurisdiction is denied a federal court. The EPA must take [final] action before it can be sued pursuant to the Act, and when it is sued, it must be sued in federal court.[3]

Because this ruling did not affect Amigos, Aminoil brought a motion pursuant to Fed. R.Civ.P. 54(b). The district court granted the motion and entered final judgment as to the Administrator upon its express determination that "there [was] no just reason for delay in entering such judgment." It is from this judgment that the instant appeal was taken.

## II

*Shell* holds that informal action[4] by the EPA, which influences a state agency's decision to reject NPDES permit applications under an EPA-approved state program, is not reviewable in federal court.[5] We had previously decided that such informal EPA action is not directly reviewable in this court pursuant to section 509(b)(1)(F) of the Act, 33 U.S.C. § 1369(b)(1)(F). *Shell, supra*, 585 F.2d at 411. In *Shell* the court concluded that federal review should similarly be unavailable in the district court. First, the court reasoned that the State Board could not reasonably be considered the agent of the EPA, *id.* at 412, and that serious constitutional problems would be raised in reviewing the claim that a federal agency had "coerced" a state agency. *Id.* at 413–14. Second, the court held that there was no basis for federal review under section 10 of the Administrative Procedure Act (APA), 5 U.S.C. § 704, as that provision is limited to review of "final agency action for which there is no other adequate remedy in a court." *Id.* at 414. Thus, because the EPA had not yet taken final action, and because state court review of the permit decision was available and would have been adequate, federal review was foreclosed.

Federal courts are not the sole avenue of review of the states' administrative decisions. Jurisdiction to review the State Board's decision is specifically conferred on the states' courts of general jurisdiction. . . . The existence of a state judi-

---

**3.** Actually, the district court stated that the EPA must take "formal" rather than "final" action before it may be sued pursuant to the Act. For accuracy, we made the change in the text. The EPA's issuance of a finding of violation, unlike the recommendation at issue in *Shell*, is undoubtedly formal action authorized by § 309(a)(1) of the Act, 33 U.S.C. § 1319(a)(1). *See* Note 4, *infra*. Like the recommendation at issue in *Shell*, on the other hand, a finding of violation is not "final agency action" within the meaning of 5 U.S.C. § 704. *See Shell Oil Co. v. Train*, 585 F.2d 408, 414 (9th Cir. 1978). The difference between the two words is not material in light of the present procedural posture of this case.

**4.** The EPA informally recommended denial of Shell's application for a permit variance pursu-

ant to a "memorandum of understanding" between the State Board and the EPA's Region IX office in San Francisco. *Shell, supra*, 585 F.2d at 411. Unlike the instant case, the EPA did not issue a formal "finding of violation" under section 309(a)(1) of the Act, 33 U.S.C. § 1319(a)(1), or take any other action pursuant to its statutory authority to supervise state NPDES permit programs.

**5.** The *Shell* decision has met with some criticism. *See* Note, *Jurisdiction to Review Informal EPA Influence Upon State Decisionmaking Under the Federal Water Pollution Control Act: Shell Oil Co. v. Train*, 92 Harv.L.Rev. 1814 (1979), and *Shell, supra*, 585 F.2d at 415–21 (Wallace, J., dissenting). However, *Shell* is binding precedent in this appeal.

cial forum for the review of the regional board's action forecloses the availability of the federal forum under the terms of the Administrative Procedure Act.

Proper respect for both the integrity and independence of the state administrative mechanism, mandated by Congress in this context, required that Shell's complaint be dismissed.

*Id.* at 414–15 (citation omitted).

Perhaps more importantly, however, the *Shell* decision was premised on the scheme of cooperative federalism embodied in the Act. Permitting federal review of such "informal" EPA action prior to any affirmative EPA action authorized by the Act would conflict with the allocation of enforcement authority and jurisdiction mandated by Congress.

> [H]olding that statutorily sanctioned advice by the EPA to a state agency constitutes final federal agency action reviewable in the federal courts would permit an applicant, dissatisfied with a decision of a state board, to circumvent the appellate process envisioned by the statute and bestow jurisdiction upon a federal court simply by alleging coercion or undue influence. The statute provides ample opportunity for the assertion of federal jurisdiction after the EPA has taken formal action.

*Id.* at 414. As in *Shell*, permitting federal review in this case would allow an individual, dissatisfied with a decision of the State Board, to attempt to circumvent the appellate process envisioned by the statute and bestow jurisdiction upon a federal court by joining the Administrator as a party to its state court action, in hope that the Administrator, as here, would exercise his right to remove.

■ Our analysis, however, must be somewhat different from that utilized in *Shell*. It is settled that the removal jurisdiction of the district court is entirely derivative of that of the state court. *Minnesota v. United States*, 305 U.S. 382, 389, 59 S.Ct. 292, 295, 83 L.Ed. 235 (1939). Where the state court lacks jurisdiction, the district court acquires none even if it would have

had jurisdiction if the suit had originally been commenced before it. *Lambert Run Coal Co. v. Baltimore & Ohio R. Co.*, 258 U.S. 377, 382, 42 S.Ct. 349, 351, 66 L.Ed. 671 (1922); *Jacobson v. Tahoe Regional Planning Agency*, 566 F.2d 1353, 1362 (9th Cir. 1977), *aff'd in relevant part sub nom., Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979). Unlike *Shell*, therefore, our focus in this case must be on the jurisdiction of the state court, rather than the federal district court.

The EPA insists, and the district court held, that *Shell* compels the conclusion that the state courts were without jurisdiction to permit joinder of the Administrator. It argues that since *Shell* establishes that judicial review of states' NPDES permit decisions is proper in state court, but not federal court, the correlative principle is equally true: the EPA is subject to the jurisdiction of the federal courts, but not the state courts, in the exercise of its supervisory authority under the Act. In light of *Shell*, Aminoil concedes that initial federal review of its dispute with the State Board and the EPA would not properly lie with the district court under the judicial review provisions of the Act or section 10 of the APA, 5 U.S.C. § 704. Nonetheless, it argues that state court review of the State Board's decision is consistent with *Shell* and that the California courts, as courts of general jurisdiction, have the power to join the Administrator as a "necessary" or "indispensable" party. *See* Cal.Civ.Proc.Code § 389. During oral argument, counsel for Aminoil aptly stated the relief his client seeks:

> [Aminoil] seeks only a single proceeding in which it can be decided whether its property in Orange County is a "wetlands" subject to federal jurisdiction, and a determination that will be binding on all parties having an interest in it.... The EPA is trying to maximize its flexibility, in that it does not want to be sued in federal court, it does not want to be sued in state court. It wants to maintain its regulatory prerogatives at the expense of the states, its partners in this federal-

state scheme, and to the considerable detriment of private litigants like [Aminoil] who seek an economical resolution of the "wetlands" federal jurisdictional issue.

Thus, Aminoil fears that it may ultimately persuade the California courts to reverse the State Board's decision, but will then be forced to relitigate the wetlands issue in an independent enforcement action brought by the EPA in district court. While we are sympathetic with Aminoil's desire for a single, determinative proceeding, a desire which is certainly consistent with long-standing notions of judicial economy and the principle that needlessly duplicative litigation should be avoided, we do not believe the state courts are the proper forums for such a proceeding under either the Act or *Shell.*

### III

The undisputed fact that the California courts are courts of general jurisdiction is not dispositive. Although these courts have jurisdiction over Aminoil's cause of action against the State Board, they may not necessarily have the power to join the Administrator as a party. It is settled that the United States, and its officers while acting in their official capacities, enjoy sovereign immunity. Thus, a state court may entertain an action against an officer of the federal government only if the United States has waived its immunity by consenting to suit or if the officer has exceeded his statutory or constitutional authority. *See, e.g., Dugan v. Rank,* 372 U.S. 609, 620–22, 83 S.Ct. 999, 1006–07, 10 L.Ed.2d 15 (1963); *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941); *Martinez v. Marshall,* 573 F.2d 555, 560 (9th Cir. 1977); *Smith v. Grimm,* 534 F.2d 1346, 1351 n.6 (9th Cir.), *cert. denied,* 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976).

Aminoil argues that a 1976 amendment to the APA, 5 U.S.C. § 702, waives

sovereign immunity in this case. That statute provides in part:

An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

This provision is clearly inapplicable. While we have held that section 702 waives the sovereign immunity of the United States for non-monetary claims against the government, *Hill v. United States,* 571 F.2d 1098, 1102 (9th Cir. 1978), the waiver of sovereign immunity in section 702 is expressly limited to actions brought "in a court of the United States . . . ." The legislative history demonstrates that section 702 was not intended to effect a waiver of sovereign immunity for suits against the United States or its officers in state courts. "The consent to suit is also limited to claims in the courts of the United States; hence, the United States remains immune from suit in state courts." H.R.Rep.No.94–1656, 94th Cong., 2d Sess. 11 (1976), *reprinted in* [1976] U.S.Code Cong. & Ad.News 6121, 6131.

Aminoil also argues that sovereign immunity does not bar its suit because the Administrator acted beyond the scope of his statutory authority. It relies primarily[6] on *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949), where the Court wrote that "where the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions." *Id.* at 689, 69 S.Ct. at 1461. Aminoil maintains that if its Orange County property is not a "wetlands" properly subject to jurisdiction under the Act, the Ad-

---

**6.** Aminoil also cites *Philadelphia Co. v. Stimson,* 223 U.S. 605, 32 S.Ct. 340, 56 L.Ed. 570 (1912). This case is easily distinguishable because there the plaintiff sought to impose personal liability on an officer of the United States

for a wrongful taking of property. *Id.* at 619, 32 S.Ct. at 344. Here, in contrast, Aminoil did not join the Administrator in his individual capacity and is not seeking to impose personal liability on him.

ministrator had no authority pursuant to the Act to issue his finding of violation or otherwise to influence the State Board.

■ We are not persuaded that *Larson* supports Aminoil's argument. There, the Court held that the key question in addressing the sovereign immunity of the United States is "whether the relief sought in a suit nominally addressed to the officer is relief against the sovereign." *Id.* at 687, 69 S.Ct. at 1460 (footnote omitted). The Court observed that where an officer of the United States acts in an unconstitutional manner or oversteps the limits of his statutorily delegated authority, his actions are not those of the sovereign and he may be held personally liable for monetary or equitable relief. *Id.* at 689–90, 69 S.Ct. at 1461. The relief Aminoil seeks, a determination that its Orange County property is not a wetlands subject to the Act and the NPDES system, is relief against the sovereign because it would preclude the Administrator in his official capacity from enforcing the Act. *Id.* at 688–89, 69 S.Ct. at 1461. *See Dugan v. Rank, supra,* 372 U.S. at 620, 83 S.Ct. at 1006. Moreover, Aminoil clearly cannot maintain that the Administrator was not authorized by the Act to issue the "finding of violation." *See* Act § 309(a)(1), 33 U.S.C. § 1319(a)(1). *See also Malone v. Bowdoin,* 369 U.S. 643, 648 n.9, 82 S.Ct. 980, 984 n.9, 8 L.Ed.2d 168 (1962). Its argument is that, since the Administrator incorrectly determined that the Orange County property is subject to federal jurisdiction, his actions were beyond the scope of his authority and are therefore not barred by sovereign immunity. *Larson,* however, clearly rejected this argument. A simple mistake of fact or law does not necessarily mean that an officer of the government has exceeded the scope of his authority. Official action is still action of the sovereign, even if it is wrong, if it "do[es] not conflict with the terms of [the officer's] valid statutory authority . . . ." 337 U.S. at 695, 69 S.Ct. at 1464.

■ Aminoil argues, finally, that consent to suit should be implied from the dual enforcement scheme of the Act itself. It contends that having vested state tribunals with jurisdiction to decide matters in which the EPA has an interest, Congress implicitly bestowed jurisdiction on those courts over the EPA. Aminoil relies on *United States v. Hellard,* 322 U.S. 363, 64 S.Ct. 985, 88 L.Ed. 1326 (1944), where the Court found implied consent to suit in state court from an act of Congress which subjected United States land (Indian property) to state law, and provided that (1) the United States would be bound by state court judgments, and (2) the United States must be given an opportunity to appear in state court actions. *Id.* at 364, 64 S.Ct. at 986. Neither of these provisions appears in the Act. If the latter did appear, Aminoil might justifiably claim that Congress had consented to joinder of the EPA in state court actions for review of NPDES permit decisions. Yet in the absence of statutory provisions similar to those involved in *Hellard,* and particularly in light of the delicate partnership between federal and state administrative agencies created by the Act, we are unwilling to infer that Congress has implicitly consented to state court actions against the EPA or the Administrator.[7]

■ A congressional waiver is not to be lightly implied; absent an unequivocal expression of congressional consent to suit, sovereign immunity bars even a claim for non-monetary relief against the government. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1352, 63 L.Ed.2d 607 (1980); *United States v. Testan,* 424

---

**7.** Section 505(a) of the Act, 33 U.S.C. § 1365(a), authorizes any citizen to bring a civil action in district court against alleged violators of the Act or against the Administrator for his failure to perform any nondiscretionary act or duty under the Act. Some courts have held that this section effects a waiver of sovereign immunity. *See, e.g., South Carolina Wildlife Federation v. Alexander,* 457 F.Supp. 118, 122 (D.S.C.1978); *Township of Long Beach v. City of New York,* 445 F.Supp. 1203, 1210 (D.N.J.1978). We do not pass upon that question. But to the extent this section might be interpreted to indicate congressional intent to waive sovereign immunity, it militates against the implied consent argued for by Aminoil because the section is, by its own terms, limited to the federal district courts.

U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); *Hill v. United States, supra.* There is no clear indication of intent to waive immunity in this case. Indeed, the Act's structure strongly supports the opposite inference—a congressional intent to preclude the exercise of state court jurisdiction over the EPA or the Administrator. Far from an unequivocal expression of consent to joinder of the agency in state court, the Act's allocation of dual enforcement authority to state and federal agencies suggests a similar allocation of judicial authority, confining review of formal EPA action to the exclusive jurisdiction of the federal courts.

■ In addition to the question of sovereign immunity, our holding is also compelled by an analysis of the issue of jurisdiction. Although the Act is silent as to the scope of state court jurisdiction, the remedies provided in the Act for review of allegedly improper EPA action lie in the federal courts. For example, the agency's issuance or denial of a permit under section 402 and its action in making any determination as to a state permit program are directly reviewable in the United States courts of appeals. Act § 509(b)(1)(D), (F), 33 U.S.C. § 1369(b)(1)(D), (F). *Cf. Crown Simpson Pulp Co. v. Costle,* 445 U.S. 193, 100 S.Ct. 1093, 63 L.Ed.2d 312 (1980) (per curiam) (EPA's formal objection to a state-issued permit, pursuant to section 402(d)(2), 33 U.S.C. § 1342(d)(2), is directly reviewable in the courts of appeals). The federal district courts have jurisdiction over civil enforcement actions brought by the Administrator. Act § 309(b), 33 U.S.C. § 1319(b). Further, section 505(a) of the Act, 33 U.S.C. § 1365(a), authorizes any citizen to bring a civil action in the district courts for enforcement of the Act against parties who discharge pollutants or against the Administrator for his failure to perform any non-discretionary act or duty under the Act.

*See* Note 7, *supra.* Although the Act does not expressly provide that these remedies against the EPA and the Administrator are exclusive,[8] when interpreting a statute as detailed as the Act, the remedies provided are presumed to be exclusive absent clear contrary evidence of legislative intent. *See National Railroad Passenger Corp. v. National Ass'n of Railroad Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974).

■ Nothing in the legislative history of the Act provides such a clear indication of contrary legislative intent. *See Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 14, 101 S.Ct. 2615, 2623, 69 L.Ed.2d 435 (1981). Indeed, we infer from the EPA's statutory right to intervene in a "citizen suit" filed in district court, *see* Act § 505(c)(2), 33 U.S.C. § 1365(c)(2), and from the lack of any correlative right to intervene in state court actions, a congressional intent to preclude state court jurisdiction over the agency or the Administrator. If, therefore, as Aminoil argues, it will remain subject to independent and potentially conflicting federal authority absent joinder of the EPA in its state court action, it is because "[p]roper respect for both the integrity and independence of the state [judicial] mechanism, mandated by Congress in this context," requires that result. *See Shell, supra,* 585 F.2d at 414–15. Holding otherwise would sharply conflict with the EPA's independent authority to supervise state permit programs under the Act. *See* Act § 402(i), 33 U.S.C. § 1342(i); S.Rep.No.95–370, 95th Cong., 1st Sess. 73 (emphasizing importance of "vigorous" EPA oversight), *reprinted in* [1977] U.S.Code Cong. & Ad.News 4326, 4398. Section 402(i) expressly permits the EPA to take enforcement action in federal court notwithstanding the existence of a lawfully-issued state NPDES permit or the EPA's prior approval of such a permit. If the

---

**8.** Some courts have suggested that the jurisdiction of the courts of appeals under section 509(b)(1), 33 U.S.C. § 1369(b)(1), is exclusive. *See Central Hudson Gas & Elec. Corp. v. EPA,* 587 F.2d 549, 555 (2d Cir. 1978); *American Frozen Food Inst. v. Train,* 539 F.2d 107, 124 (D.C.Cir.1976); *American Petroleum Inst. v. Train,* 526 F.2d 1343, 1345–46 (10th Cir. 1975). In addition, it appears that the district courts' jurisdiction over civil enforcement actions initiated by the Administrator is "exclusive of the courts of the States." 28 U.S.C. § 1355.

EPA finds that any person is in violation of the Act, it must issue a finding of violation and institute a civil enforcement action in federal court if the state agency involved itself fails to commence "appropriate enforcement action." Act § 309(a)(1), 33 U.S.C. § 1319(a)(1). Thus, allowing joinder of the EPA in a state court action could create substantial practical impediments to the EPA's exercise of its supervisory responsibility.

■ Therefore, this is not a case in which construing the Act to preclude state court review of federal agency action "creat[es] . . . a seemingly irrational bifurcated system." *Crown Simpson Pulp Co. v. Costle, supra,* 445 U.S. at 197, 100 S.Ct. at 1095 (footnote omitted). We hold, as did the district court, that judicial review of EPA action, whether under the Act or section 10 of the APA, 5 U.S.C. § 704, must await final EPA action and must be initiated in federal court.

## IV

This holding does not conflict with our previous decision in *United States v. ITT Rayonier, Inc.,* 627 F.2d 996 (9th Cir. 1980) (*Rayonier*). There, we held that the Act's allocation of concurrent enforcement authority does not prevent the EPA from being collaterally estopped based upon a state court action, to which it was not a party, for review of the terms of a state-issued NPDES permit. *Id.* at 1002, 1003–04. Aminoil argues that a very limited extension of *Rayonier* would allow the EPA or the Administrator to be joined as a party to a state court action. It contends that it is inconsistent to hold, as we did in *Rayonier,* that the EPA may be bound by a state court decision to which it was not a party, but that it may not be joined in a state

court action, the disposition of which may bind it. According to Aminoil, therefore, the obvious corollary of *Rayonier* is that the EPA may be joined in a state court action for review of a NPDES permit decision by a state agency.[9]

*Rayonier* involved the proper construction of a state-issued NPDES permit which provided that effluent limitations for certain pollutants would be modified to be consistent with any final guidelines promulgated by the EPA. When those guidelines were promulgated, the state agency issued an order which required the permit holder to comply with the federal guidelines. After the EPA issued a finding of violation to the permit holder and the state agency pursuant to section 309(a)(1) of the Act, 33 U.S.C. § 1319(a)(1), a state court reversed the state agency, finding that the language of the permit excused compliance with the federal guidelines pending judicial approval of the final guidelines. The EPA then filed its own enforcement action in district court pursuant to section 309(b) of the Act, 33 U.S.C. § 1319(b). *Rayonier, supra,* 627 F.2d at 999. We reversed the district court's grant of summary judgment for the EPA. We reasoned that the Act was not such a countervailing statutory policy as to preclude application of the doctrine of collateral estoppel. *Id.* at 1000–02. We further reasoned that collateral estoppel was applicable because "[i]n the context of [that] case," the EPA and the state agency were in privity. *Id.* at 1003. We clearly indicated, however, that the issues presented in *Rayonier* "may be *sui generis." Id.* at 1004.

We do not believe that *Rayonier* supports the position for which Aminoil argues. First, the case is distinguishable from the instant dispute. Although *Rayonier* places a limitation on the EPA's ability to bring an independent enforcement action, it is a spe-

---

**9.** There appears to us to be an inconsistency between this argument and Aminoil's prior contention. On the one hand, Aminoil insisted earlier that it should be permitted to join the Administrator as a party to its state court action because otherwise, even if it is successful in that suit, it may be forced to relitigate the wetlands issue if the EPA decides to exercise its supervisory authority under the Act. On the other hand, Aminoil now argues that the Administrator should be joined as a party because otherwise *Rayonier* will preclude him from relitigating the issue in a subsequent civil enforcement action. In that situation, however, Aminoil's fear of being denied a single, determinative adjudication would be unfounded.

cific, narrow limit. *Rayonier* involved construction of a state-issued NPDES permit. Here, in contrast, the substantive issue presented in Aminoil's complaint is whether its Orange County property is a "wetlands" within the meaning of certain lawfully-promulgated administrative regulations. In other words, the issue is whether federal jurisdiction over "navigable waters" extends to Aminoil's property and therefore makes that property subject to the requirements of the Act. We recently concluded that a holding under state law is not dispositive of the question of navigability under federal law. *Puget Sound Power & Light Co. v. Federal Energy Regulatory Comm'n*, 644 F.2d 785, 788 (9th Cir. 1981). *Puget Sound*, therefore, implies that there are situations in which the "wetlands" issue cannot be finally determined by a state court.

Alternatively, even if the EPA could be collaterally estopped in a subsequent enforcement action, it does not necessarily follow that state courts can exercise jurisdiction over the agency or its Administrator. The doctrine of sovereign immunity and the allocation of judicial authority implicit in the structure of the Act preclude the states from exercising jurisdiction over the EPA. This allocation of federal-state jurisdiction follows logically from the framework of cooperative federalism created by the Act. Thus, the preclusion of state court jurisdiction is a product of the congressional policy judgment underlying the Act itself. It is not for us to revise that congressional judgment merely because it may place private litigants in the unenviable and burdensome position of being required to litigate their liability under the Act in two separate judicial systems. *See Central Hudson Gas & Elec. Corp. v. EPA*,

587 F.2d 549, 559 (2d Cir. 1978). Therefore, if it is inconsistent with *Rayonier* to hold that the EPA may not be joined as a party to a state court action the disposition of which may ultimately bind it, it is the responsibility of Congress to correct any such inconsistency by amending the Act to allow the EPA to be joined in state court actions for review of state agency NPDES permit decisions.

■ We recognize, on the other hand, that our holding does not comport well with traditional notions of judicial economy and the principle that needlessly duplicative litigation should be avoided. We emphasize, therefore, that we hold only that, in order to be consistent with *Shell*, nonfinal EPA action is not reviewable in the federal courts by means of joining the EPA as a party to a state court action seeking review of a state NPDES permit decision. Under both the Act and section 10 of the Administrative Procedure Act, 5 U.S.C. § 704, review of EPA action must await final agency action and must be initiated in federal court.[10]

## V

The district court's order dismissing the Administrator as a party, and its final judgment entered as to the Administrator, are affirmed. As the only basis for federal jurisdiction in this case was the Administrator's right to remove this action pursuant to 28 U.S.C. § 1442(a)(1), the district court should remand the remainder of the action to the state court.

AFFIRMED.

---

**10.** We do not decide that it is impossible for private litigants such as Aminoil to obtain a single, dispositive determination of the "wetlands" issue. For example, we do not consider the propriety of filing an action for a declaratory judgment in the federal district court and joining the EPA and the appropriate state agency as defendants. Nothing in our decision precludes the federal courts from exercising jurisdiction over an EPA-approved state agency. Absent problems of ripeness, it may be that there are no substantial barriers to application

of the federal Declaratory Judgment Act, 28 U.S.C. § 2201. *See Abbott Laboratories v. Gardner*, 387 U.S. 136, 139–41, 153–54, 87 S.Ct. 1507, 1510 11, 1517–18, 18 L.Ed.2d 681 (1967). *See also Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977); S.Rep. No.92 414, 92d Cong., 2d Sess. (*citing Abbott Laboratories v. Gardner, supra*), *reprinted in* [1972] U.S.Code Cong. & Ad.News 3668, 3750. Nonetheless, we expressly reserve this question to a later case where it may be properly presented.