**FREDERICK E. BOUCHARD, INC.,
et al., Plaintiffs,**

v.

**UNITED STATES of America,
Defendant.**

**UNITED STATES of America, Plaintiff,**

v.

**The TUG FREDERICK E. BOUCHARD,
et al., Defendants.**

**Civ. A. Nos. 77–3038–K, 78–2866–K.**

United States District Court,
D. Massachusetts.

April 2, 1984.

Thomas Muzyka, Leo F. Glynn, Glynn & Dempsey, Boston, Mass., for plaintiffs.

R. Scott Blaze, Trial Atty., Asst. Director, Admiralty & Aviation Section, Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for the U.S.

## MEMORANDUM AND ORDER

KEETON, District Judge.

On January 28, 1977, the barge B–65 ("the barge") was under the control of the tug Frederick E. Bouchard ("the tug"). The barge struck the bottom of Buzzards Bay and was holed, releasing into the water a quantity of the oil it was transporting. Two actions arising from this oil spill were consolidated. For the purposes of this Memorandum, the tug and its owners and operators, and the barge and its owners and operators will be referred to collectively as "defendants."

### I.

The government brought an action to recover the cleanup expenses it incurred as a result of this oil spill. The government is suing the tug, its owners and operators ("Bouchard, Inc." and/or "Bouchard Transportation"), and the barge and its owners and operators ("Bouchard No. 15 Corp." and/or "Bouchard Transportation"). The

government asserts claims under maritime tort law (first cause of action), the Rivers and Harbors Act of 1899 (second cause of action), and the Federal Water Pollution Control Act of 1972 (third cause of action). Defendants moved to dismiss the first and second causes of action on the ground that the Federal Water Pollution Control Act ("FWPCA") provides the government's exclusive remedy for recovery of oil pollution removal costs.

### A.

■ Under the FWPCA, a vessel discharging a hazardous substance, such as oil, into navigable waters is strictly liable to the government for the actual cleanup expenses that result. The liability of a discharging vessel's owner or operator is limited to an amount based on the vessel's gross tonnage. However, if the government shows that the discharge resulted from certain willful conduct, the vessel's owner or operator is liable for the full actual costs. 33 U.S.C. § 1321(f)(1).[1]

The government argues that the FWPCA was not intended to preclude supplementary remedies under general maritime law and the Rivers and Harbors Act of 1899 ("the Refuse Act"). It contends that the FWPCA was enacted to ensure a minimum recovery of oil spill cleanup expenses, and that alternative theories of recovery would serve the statutory purpose of preventing water pollution. *See* 33 U.S.C. § 1321(b)(1). The government argues that the unlimited strict liability provisions of the Refuse Act, 33 U.S.C. § 407, do not conflict with the limited strict liability provisions in the FWPCA. It reasons that recovery under the Refuse Act is limited by the simple fact that there may exist no assets against which such recovery may be had.

■ I conclude that the FWPCA provides the government's exclusive remedy against a discharging vessel and its owners and operators for recovery of oil spill clean-

1. The government does not contend that the discharge at issue here resulted from willful conduct.

up costs. When Congress intended to preserve existing non-FWPCA remedies, it did so by express language. *See* 33 U.S.C. § 1321(h). "[W]hen interpreting a statute as detailed as the [FWPCA], the remedies provided are presumed to be exclusive absent clear contrary evidence of legislative intent." *Aminoil U.S.A., Inc. v. California State Water Resources Control Board,* 674 F.2d 1227, 1235 (9th Cir.1982).

The statutory scheme of imposing strict liability on discharging vessels but limiting recovery (except if willful conduct is shown) represents a compromise "to deter oil spills and recover cleanup costs in a manner that would protect most vessel owners from potentially crushing liability." *U.S. v. Dixie Carriers, Inc.,* 627 F.2d 736, 739 (5th Cir.1980). Courts uniformly have held that allowing recovery under general maritime law or the Refuse Act would upset this balance of interests. *U.S. v. M/V Big Sam,* 681 F.2d 432 (5th Cir.1982), *cert. denied* — U.S. ——, 103 S.Ct. 3112, 77 L.Ed.2d 1367 (1983); *Matter of Oswego Barge Corp.,* 664 F.2d 327 (2d Cir.1981), *reh. denied* 673 F.2d 47 (1982); *Dixie Carriers, supra; Steuart Transp. Co. v. Allied Towing Corp.,* 596 F.2d 609 (4th Cir. 1979); *U.S. v. J.P. McAllister,* 1981 AMC 780 (D.P.R.1980). *But cf.* Note, *Oil Spills and Cleanup Bills: Federal Recovery of Oil Spill Cleanup Costs,* 93 Harv.L.Rev. 1761 (1980) (supporting government recovery against discharging vessels under maritime tort and common law of nuisance). Therefore, the government's first and second causes of action against the barge B–65 and its owners and operators shall be dismissed for failure to state a claim against these defendants.

### B.

The tug and its owners and operators joined in the motion to dismiss the government's maritime tort and Refuse Act claims. They argue that the tug and barge comprised a single discharging vessel, so that the FWPCA is the government's exclusive remedy against the tug as well as the barge. Alternatively, they argue that the

FWPCA precludes alternate legal remedies against non-discharging third parties.

The tug and its owners and operators rely on the government's complaint in support of their assertion that the tug is not a "third party" within the meaning of the FWPCA. The complaint alleges that the "tug and barge were at all pertinent times designed to be and operated as an integrated tow." The movants reason that since the tug and barge functioned as one unit, the two vessels comprise a single discharging party. The movants rely also on court interpretations of the term "third party" as it is used in § 1321(f).

The FWPCA refers to "third parties" in essentially two different contexts. Section 1321(f) imposes strict liability on discharging vessels except "where an owner or operator can prove that a discharge was caused solely by . . . an act or omission of a third party." This third party defense was designed to cover situations such as that in which a third-party ship collides with an unrelated oil-carrying vessel. *U.S. v. LeBeouf Bros. Towing Co.,* 621 F.2d 787 (5th Cir.), *reh. denied* 629 F.2d 1350 (1980), *cert. denied,* 452 U.S. 906, 101 S.Ct. 3031, 69 L.Ed.2d 406 (1981). Courts have narrowly construed the third party defense in § 1321(f), in order to fulfill the statutory purpose of assuring government reimbursement for cleanup costs by holding discharging vessels strictly liable. *LeBeouf, supra* (tug not a "third party" for the purposes of § 1321(f)); *Burgess v. M/V Tamano,* 564 F.2d 964 (1st Cir.1977), *cert. denied* 435 U.S. 941, 98 S.Ct. 1520, 55 L.Ed.2d 537 (1978) (tanker's pilot not a "third party" insulating tanker from FWPCA liability).

The FWPCA also permits the government to proceed against a "third party." Section 1321(g) imposes strict but limited liability on a non-discharging third party who is solely responsible for another vessel's discharge. Section 1321(h) preserves existing remedies against any third party "whose actions may in any way have caused or contributed to the discharge of oil."

The movants contend that "third party" should be construed to have the same meaning throughout § 1321. They argue that the tug is not a "third party" because of its close contractual and operational relationship with the discharging vessel. The fallacy of this reasoning is the premise that one who is not a "third party" for the purposes of § 1321(f) cannot be a "third party" within the meaning of either subsection (g) or subsection (h).

For the purposes of § 1321(f), "third party" is to be interpreted from the perspective of the discharging vessel's defense of third-party sole cause. This subsection comes into play when the discharging vessel alleges a separate and independent sole cause for the discharge, for which it should not be held responsible. A contractual relationship between the discharger and the alleged third party is highly relevant to such a contention. *See Burgess, supra.*

■ It does not follow that such a contractual relationship protects the contracting party from "third-party" liability in § 1321(g) and (h). The term "third party" in subsections (g) and (h) is to be construed from the perspective of the government's claim of liability against the third party, either severally or jointly with the discharging vessel. As to the government, any party other than the discharging vessel is a potential source of joint and several liability. *Complaint of Berkley Curtis Bay Co.*, 557 F.Supp. 335 (S.D.N.Y.), *aff'd in part, remanded in part on other grounds*, 697 F.2d 288 (2d Cir.1983); *see also Tug Ocean Prince, Inc. v. U.S.*, 584 F.2d 1151 (2d Cir.1978), *cert. denied* 440 U.S. 959, 99 S.Ct. 1499, 59 L.Ed.2d 772

(1979) (tug liable under § 1321(g) for clean-up costs arising from collision between barge and rock). I conclude that the tug is a third party for the purposes of 33 U.S.C. § 1321(g) and (h), regardless of whether it occupies this status for the purposes of subsection (f).[2]

■ Alternatively, the tug's motion to dismiss the government's non-FWPCA claims must be denied because it presents a mixed question of law and fact. In deciding a motion to dismiss, a court rules on questions of law only and does not weigh evidence. *See O'Neill v. Dell Publishing Co., Inc.*, 630 F.2d 685, 687 (1st Cir.1980). The characterization of the tug's status under any subsection of § 1321 cannot be made on less than a full factual record.

Moreover, at this stage in the litigation it would be inappropriate to assume that the term "third party" has precisely the same meaning in subsections (f), (g) and (h) of § 1321. The only difference resulting from a determination that the tug is not a third party would be that the FWPCA would then provide the government's sole remedy against the tug. The court can reexamine this issue at any time before rendering final judgment.

The government's complaint alleges that the barge, the tug, and the owners and operators of both vessels contributed to the oil spill at issue. Accepting those allegations as true, *Cooper v. Pate*, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964) (per curiam), and viewing the complaint in its most favorable light, *Harper v. Cserr*, 544 F.2d 1121, 1122 (1st Cir.1976), the tug was

---

**2.** Characterization of the tug as a "third party" under § 1321(f) presents other complex issues of law that I need not resolve here. Although a reading of subsection (f) alone might support a construction of the statute that proof of third-party sole cause is a complete defense, that subsection cannot be read alone. When (g) and (h) are read along with (f), the statute clearly manifests a Congressional intent that a mere allegation of third-party sole cause will not insulate the discharger from liability to the government but instead provides only for the remedy of subrogation. Moreover, the additional provision in subsection (g), providing that third-party

liability to the government exists when third-party sole cause is not merely alleged but proved, does not explicitly deal with the question whether the discharger is nonetheless liable to the government, with rights of subrogation to the government's claim. There are obvious reasons why rights of indemnity may exist in favor of a discharging vessel in a close contractual relationship with another party regardless of whether such a party is characterized as a "third party," either for the purposes of subsection (f) or for the purposes of subsections (g) and (h). The resolution of these questions is not essential to determination of the present motion.

not the sole cause of the discharge. *See* 33 U.S.C. § 1321(g). Therefore, at this stage in the proceedings, I need not decide whether the FWPCA is the government's exclusive remedy against a sole-cause non-discharging party. *See Big Sam, supra; U.S. v. City of Redwood City*, 640 F.2d 963 (9th Cir.1981).

The FWPCA states in relevant part:

The liabilities established by this section shall in no way affect any rights which ... the United States Government may have against any third party whose actions may in any way have caused or contributed to the discharge of oil or hazardous substance.

33 U.S.C. § 1321(h). The clear intent of this provision is to preserve preexisting non-FWPCA remedies at least as against any non-discharging third party not solely responsible for causing an oil spill. *United States v. Bear Marine Services*, 509 F.Supp. 710 (E.D.La.1980), *appeal dismissed* 696 F.2d 1117 (5th Cir.1983); *see also Oswego Barge, supra* at 341 n. 9. Therefore, the motion to dismiss the government's maritime tort and Refuse Act claims against the tug, its owners and operators must be denied.

### II.

The tug, its owners and operators moved to dismiss the government's claims against them, asserting issue preclusion. As a result of the accident leading to the oil spill, the U.S. Coast Guard brought suit to revoke the licenses of the tug's master and mate. The proceedings against the mate were voluntarily dismissed with prejudice. After a hearing, an Administrative Law Judge ("ALJ") ruled that the government failed to prove that the tug's master was negligent. The ALJ also found that the grounding of the barge was caused by the unforeseen force of wind and ice.

The tug, its owners and operators contend that the ALJ's decision constitutes an actual and necessary determination by a court of competent jurisdiction that they were not negligent. The movants suggest that all of the government's claims in the

instant action rest upon the alleged negligence of the master and mate of the tug. Moreover, they contend that the ALJ held in essence that the accident was caused by an act of God, precluding the government from FWPCA recovery. 33 U.S.C. § 1321(f) and (g).

I conclude that the claims asserted by the government against the movants are not barred by the ALJ's decision in the license revocation proceeding. The burden is on the party asserting preclusion to show the specific issues involved were actually litigated and determined in the former action. *See, e.g., Hernandez v. City of Los Angeles*, 624 F.2d 935, 937 (9th Cir.1980). Reasonable doubts are resolved against an asserted preclusion. *Schneider v. Colegio de Abogados de Puerto Rico*, 546 F.Supp. 1251, 1271 (D.P.R.) *aff'd in part, reversed in part on other grounds sub nom In Re Justices of Supreme Court of Puerto Rico*, 695 F.2d 17 (1st Cir.1982).

The question of the movants' negligence was not actually litigated in the license revocation hearing. The movants correctly contend that under the doctrine of respondeat superior, they would be liable for the negligence of the master and mate of the tug. However, it does not follow that since these employees were not found negligent in relation to the specific charges there involved, the movants cannot be found negligent. I note also that claims of negligence of the master and mate alleged here go beyond those alleged in the administrative proceedings. Moreover, it is not clear that the meaning of negligence in these different contexts is identical. In addition, the movants may have been negligent in ways unrelated to the conduct of the tug's master and mate.

Similarly, the ALJ did not "actually and necessarily" decide that the accident was caused by an act of God. *Montana v. U.S.*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). The ALJ's statement that the accident was caused by the unforeseen force of wind and ice was not expressly incorporated in either his "findings of facts" or "conclusions of law." *See generally* Wright,

Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 4420 (1981).

Also, a determination of the cause of the accident was unnecessary to support the ALJ's decision in the license revocation action. The sole issue before the ALJ was the alleged negligence of the tug's master. Having found that the master acted with due care, the ALJ's statement concerning the cause of the accident was not essential to the judgment. *See Raxton Corp. v. Anania Associates, Inc.*, 668 F.2d 622, 624 (1st Cir.1982).

■ I conclude that the license revocation proceeding did not operate to preclude litigation of the issues involved in this action. Therefore, the motion to dismiss the government's claims against the tug, its owners and operators shall be denied.

### III.

■ The tug, the barge and the owners and operators of each have moved for a protective order to prohibit the government from arresting these vessels. It is clear that an action in rem against a vessel is proper to enforce a maritime lien. Supplemental Rules for Certain Admiralty and Maritime Claims, Rule C(1). Once a proper complaint to enforce a maritime lien is filed, the clerk must issue and deliver the warrant for arrest of the vessel. *Id.*, Rule C(3). Defendants have not shown that the government's complaint is defective in any way. *See generally* 7A J. Moore, Federal Practice ¶ C.12 (2d ed. 1976).

■ Rather, defendants argue that arrest of the vessels is not necessary to secure the government's claims. They contend that the government's FWPCA claim for damages is less than the amount of financial security defendants purportedly provided to the government pursuant to 33 U.S.C. § 1321(p)(1). Defendants have submitted no evidence showing the amount of this fund.

The government has submitted an affidavit showing that from February 1, 1978 until March 8, 1984, interest in the amount of $288,180.62 accrued on its actual cleanup expenses of $316,822.13. Docket No. 57. The total amount claimed by the government, exclusive of attorney's fees and costs and statutory penalties, far exceeds the amount of financial security defendants allegedly provided to the government. Therefore the motion for a protective order shall be denied.

### ORDER

For the foregoing reasons, it is ORDERED:

The United States' first (maritime tort) and second (Rivers and Harbors Act of 1899) causes of action against the barge B–65 and its owners and operators are dismissed for failure to state a claim.

The motion to dismiss the United States' first and second causes of action against the tug Frederick E. Bouchard, its owners and operators is denied.

The motion to dismiss all the claims asserted by the United States against the tug Frederick E. Bouchard, its owners and operators on the basis of issue preclusion is denied.

The motion for a protective order to prohibit the United States from arresting the tug and barge is denied.