**KYOEI KAIUN KAISHA, LTD., Kitanippon Marine Company, Ltd., and Dowa Fire and Marine Insurance Company, Plaintiffs,**

v.

**M/V BERING TRADER, its engines, tackle, gear, equipment, and appurtenances, in rem, and Bering Trader, Inc., and Kemp Pacific Fisheries, Inc., in personam, Defendants.**

No. C90–613R.

United States District Court,
W.D. Washington,
at Seattle.

March 6, 1991.

Stephen Christopher Smith, Lane Powell Spears & Lubersky, Seattle, Wash., for M/V Bering Trader, Bering Trader, Inc. and Kemp Pacific Fisheries, Inc.

Robert J. Bocko, Bradbury, Bliss & Riordan, Seattle, Wash., for Kyoei Kaiun Kaisha Ltd., Kitanippon Marine Co. Ltd., and Dowa Fire and Marine Ins. Co.

Warren A. Schneider, U.S. Dept. of Justice, Torts Branch, Civ. Div., San Francisco, Cal., for U.S.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COMMON LAW CLAIMS

ROTHSTEIN, Chief Judge.

THIS MATTER comes before the court on defendants' motion to dismiss the government's common law claims. Having reviewed the motion, together with all documents filed in support and opposition, and being fully informed, the court finds and rules as follows.

### FACTUAL BACKGROUND

On December 10, 1988, near Lost Harbor, Alaska, M/V AOYAGI MARU was moored to M/V BERING TRADER. A winter storm was blowing and BERING TRADER dragged anchor. The vessels were forced to separate. As the vessels separated, the mooring lines apparently fouled AOYAGI MARU's propeller, rendering her powerless. AOYAGI MARU grounded on a rocky beach and her hull ruptured. Shortly thereafter, the government blew up the vessel to burn off its fuel oil.

The government initiated the instant action to recover the costs of cleaning up the

oil spill from Kyoei Kaiun Kaisha, the owner of AOYAGI MARU, and Kitanippon Marine, the operator and bareboat charterer of the vessel.[1] In this action, the government has advanced claims, inter alia, under the Federal Water Pollution Control Act ("FWPCA"), 33 U.S.C. § 1321, under the Refuse Act, 33 U.S.C. § 407, and on the common law theories of negligence, maritime negligence/unseaworthiness, nuisance, and quasi-contract.

Defendants move to dismiss the government's second, third, sixth, seventh and eighth causes of action, the common law claims, on the grounds that they have been preempted by the FWPCA. Defendants also request that the government be allowed to proceed only with its claim under the FWPCA. As both parties address at length the issue of whether the Refuse Act claim is preempted by the FWPCA, the court will treat this as a request to dismiss the government's claim under the Refuse Act.

## ANALYSIS

The Second, Fourth, and Fifth Circuits have addressed the question of the FWPCA's preemptive effect on the government's common law and Refuse Act claims for expenses incurred in removing spilled oil.[2] These courts have uniformly held that the FWPCA preempts such claims. The issue which this court must decide is thus a narrow one: whether the Ninth Circuit would find that the FWPCA preempts the government's common law and Refuse Act claims for expenses incurred in cleaning up an oil spill.

## I. Standards For Preemption Of Federal Common Law By Congressional Act

■ In determining whether a Congressional act has preempted federal common

law,[3] the court begins with the presumption "that it is for Congress, not federal courts, to articulate the appropriate standards to be applied as a matter of federal law." *City of Milwaukee v. Illinois*, 451 U.S. 304, 317, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981). It is not necessary for Congress to affirmatively proscribe the use of federal common law for it to be preempted. An act of Congress will preempt federal common law when the act "speaks directly" to a question or "addresses" a problem which had previously been settled by appeal to federal common law. *Id.* 451 U.S. at 315, 101 S.Ct. at 1791-92.

## II. The Preemptive Effect of the FWPCA

■ There is little question that the FWPCA speaks directly to the question of an owner's or operator's liability for the government's expenses incurred in cleaning up an unlawful oil spill. In relevant part, the FWPCA provides,

> [an] owner or operator of any vessel from which oil ... is discharged in violation of [the FWPCA] shall, notwithstanding any other provision of law, be liable to the United States Government for the actual costs incurred ... for the removal of such oil ... by the United States Government in an amount not to exceed ... $150 per gross ton of such vessel ... except where the United States can show that such discharge was the result of willful negligence or willful misconduct within the privity and knowledge of the owner, such owner or operator shall be liable to the United States Government for the full amount of such costs.

33 U.S.C. § 1321(f).

The Circuit courts have pointed to the FWPCA's legislative history in support of

1. The United States' action was initiated under case number C90-1417(M)R. It was consolidated into the instant case by order of January 7, 1991.

2. This issue was recently addressed in the Western District of Washington by Judge Dimmick in *Olympic Tug and Barge v. U.S.*, 1990 A.M.C. 1671, 1990 WL 166368 (W.D.Wa.1990).

3. The Refuse Act remedies were created by the federal judiciary in order to give effect to the Refuse Act which imposed duties but failed to specify remedies for the breach of them. *Oswego Barge*, 664 F.2d [327] at 335. (2nd Cir.1981) For purposes of a preemption analysis, such remedies are essentially treated as federal common law. *Id.*

their several holdings that this section of the FWPCA preempts other governmental claims for the expenses of removing oil. The legislative history of the FWPCA indicates that Congress devoted considerable attention to the issues of the nature and the extent of the liability to be imposed on owners and operators.[4] The initial House and Senate bills contained very different approaches to these issues. These proposals were ultimately replaced by a compromise position which rejected the Senate's proposed unlimited liability for negligent discharge and provided for strict but limited liability, absent proof of willful negligence or misconduct. *See U.S. v. J.P. McAllister*, 1981 A.M.C. 780, 789–91 (D.C. P.R.1980).

In *Steuart Transportation Co. v. Allied Towing Corp.*, 596 F.2d 609 (4th Cir.1979), the Fourth Circuit cited the Senate report which accompanied the Senate bill as evidence of the concern that Congress felt for achieving the proper balance in this area. The report states, in relevant part,

> Extensive testimony was taken and subsequent extensive discussion occurred in executive session on the factors which should be considered in determining the type of liability. Among those factors were (1) the effect of too rigid a liability test on maritime commerce; (2) the availability of insurance for any specific amount or type of liability; (3) the economic impact of any specific amount of liability on the owner of the vessel, the shipper of oil and the consumer; and (4) the impact of a burdensome liability test on the U.S. Government and the people of the United States.

S.Rep. No. 91–351, 91st Cong., 1st Sess. 5 (1969) (*quoted in Steuart Transport.*, 596 F.2d at 617).

Courts have found such expressions of Congressional concern regarding these liability issues to indicate "that Congress intended recoveries within the statute's liability limit to be the maximum removal cost recoveries available to the government." *Steuart Transport.*, 596 F.2d at 617. Courts have overwhelmingly held that allowing recovery beyond the limits set by § 1321(f)(1) would be inconsistent with the manner in which Congress dealt with the limitation of liability issue in the statutory scheme of the FWPCA. *See Matter of Oswega Barge Corp.*, 664 F.2d 327, 344 (2d Cir.1981), *reh. denied* 673 F.2d 47 (1982); *U.S. v. Dixie Carriers*, 627 F.2d 736, 741 (5th Cir.1980); *Steuart Transport.*, 596 F.2d at 618; *Frederick E. Bouchard, Inc. v. United States*, 583 F.Supp. 477, 480 (D.Mass.1984); *Olympic Tug and Barge v. U.S.*, 1990 A.M.C. 1671 (W.D.Wa.1990); *J.P. McAllister*, 1981 A.M.C. at 788; *Valley Towing v. American Wheat*, 1981 A.M.C. 455, 456 (E.D.La.1978). On such grounds, courts have uniformly found that the FWPCA preempts the government's common law and Refuse Act claims against a vessel's owners and operators for recovery of expenses incurred in cleaning up an oil spill.

## III. The Ninth Circuit's Probable Holding On Preemption of Common Law Claims

The government concedes that the weight of authority supports preemption, but observes that the Ninth Circuit has not yet ruled on this issue. The government attempts to persuade the court that the Ninth Circuit would depart from the majority position on this issue. It argues that the other courts have used flawed reasoning to find that the FWPCA's remedial scheme preempts common law remedies for recovering the costs of cleaning up an oil spill, to wit, other courts failed "to appreciate the difference between a recovery based on a negligence premise and one based on strict liability." Opposition of Plaintiff, p. 7.

---

**4.** Much of the legislative history comes from committee reports and debates relating to the enactment of the Water Quality Improvement Act of 1970, Pub.L. 91–224, 84 Stat. 91. These sources have been considered as the source for the legislative history of the later enacted FWPCA. *U.S. v. M/V Big Sam*, 681 F.2d 432 (5th Cir.1982), *cert denied* 462 U.S. 1132, 103 S.Ct. 3112, 77 L.Ed.2d 1367 (1983).

The government contends that Congress legislated only in regards to recovery based on strict liability when it enacted the FWPCA. In support, the government cites a policy statement contained in the FWPCA: "[it] is the policy of the United States that there should be no discharges of oil ... into or upon the navigable waters of the United States...." 33 U.S.C. § 1321(b)(1). The government argues that such a broad policy is best served by reading the FWPCA to allow the government to use negligence based theories of recovery as well as the strict liability and willful negligence theories stated in § 1321(f).

This argument is without merit. The government essentially asserts that the Ninth Circuit would adopt a position which Congress has already considered and rejected. *See J.P. McAllister,* 1981 A.M.C. at 789–91. Furthermore, the government's argument ignores the delicate balance struck in § 1321(f)(1) between the policy of deterring oil spills and the policy of recovering cleanup costs in an expeditious manner that protects most vessel owners from crushing liability. *See Dixie Carriers,* 627 F.2d at 739; *Bouchard,* 583 F.Supp. at 480.

The government also alleges that § 1321(*o*)(1) evidences Congress' intent to allow recovery on alternate theories beyond the limits set in § 1321(f)(1). Section 1321(*o*)(1) states, in relevant part,

> [n]othing in this section shall affect or modify in any way the obligations of any owner or operator of any vessel ... to any person or agency under any provision of law for *damages to any publicly owned or privately owned property* resulting from a discharge of any oil ... or from the removal of any such oil....

(emphasis added). This argument has been previously considered and rejected by many courts. Section 1321(*o*)(1) retains alternate theories of recovery for damage to property; it does not apply to recovery for cleanup costs. *Oswego Barge,* 664 F.2d at 327; *Steuart Transportation,* 596 F.2d at 616; *Dixie Carriers,* 627 F.2d at 741–42. Accordingly, § 1321(*o*)(1) does not provide any support for the government's position.

The Ninth Circuit cases cited by the government do not indicate that the Ninth Circuit would in any way disagree with the above analysis. Both of the cases cited, *United States v. Dae Rim Fishery Co., Ltd.,* 794 F.2d 1392 (9th Cir.1986); and *United States v. City of Redwood City,* 640 F.2d 963, (9th Cir.1981), deal with actions against third parties. In each case, the Ninth Circuit relied on § 1321(h)(2) to hold that the FWPCA does not preempt the use of additional remedies against third parties. Section 1321(h)(2) provides, "[t]he liabilities established by this section shall in no way affect any rights which ... (2) the United States Government may have against any *third party* whose actions may in any way have caused or contributed to the discharge of oil...." (emphasis added). There is no provision in the FWPCA which allows the government to retain such rights against owners or operators of a discharging vessel.

This court concludes that given the weight of authority and the FWPCA's legislative history, the Ninth Circuit would hold that the FWPCA preempts the common law claims advanced by the government. Accordingly, defendant's motion to dismiss will be granted in regards to these claims.

### IV. The Ninth Circuit's Probable Holding on Preemption of The Refuse Act Claim

In addition to the arguments outlined above, the government argues that when Congress specified that certain sections of the Rivers and Harbors Act were to be repealed by the FWPCA, it intended all other portions of the Rivers and Harbors Act, the Refuse Act among them, to be retained. *See* 33 U.S.C. § 1371(b). From this, the government concludes that it should be able to use the judicially created Refuse Act remedies to recover costs incurred in removing oil beyond the liability limits set by the FWPCA.

Once again, this argument has been presented to and rejected by other courts. Every court which has confronted this issue has recognized that the effect of imposing such judge-made remedies is the same as allowing the government to state a common law claim: it changes the balance of

competing policies struck by Congress in § 1321(f)(1). *See Oswego Barge,* 664 F.2d at 343; *Dixie Carriers,* 627 F.2d at 740–41; *Steuart Transport.,* 596 F.2d at 614–18; *Bouchard,* 583 F.Supp. at 480; *J.P. McAllister,* 1981 A.M.C. at 792. As a result, no court has allowed the government to use claims made under the Refuse Act to recover the costs of oil removal beyond the limits set by the FWPCA.

There is no reason to believe that the Ninth Circuit would disagree with this analysis or with this result. Accordingly, defendant's motion will be granted as to the government's claims under the Refuse Act.

## CONCLUSION

NOW, THEREFORE, defendants' motion to dismiss the government's second, third, sixth, seventh and eighth causes of action, and the government's claim under 33 U.S.C. § 407 is GRANTED.