**KYOEI KAIUN KAISHA, LTD.,
et al., Plaintiffs,**

v.

**M/V BERING TRADER,
et al., Defendants.**

**UNITED STATES of America, Plaintiff,**

v.

**KYOEI KAIUN KAISHA, LTD.,
et al., Defendants.**

**No. C90–613R.**

United States District Court,
W.D. Washington,
at Seattle.

Aug. 29, 1991.

---

See also, 795 F.Supp. 1054.

Stephen Christopher Smith, Lane, Powell, Spears, Lubersky, Jerome Shulkin, Shulkin, Hutton & Bucknell, Seattle, Wash., for Bering Trader, et al.

Robert J. Bocko, Herbert H. Ray, Jr., Bliss Riordan, Seattle, Wash., for Kemp Pacific Fisheries, Inc., Kyoei Kaiun Kaisha Ltd., Kitanippon Marine Co. Ltd. and Japan Shipowners' Mut. Protection and Indem. Ass'n.

Susan L. Barnes, Office of U.S. Atty., Seattle, Wash., Philip A. Berns, Warren A. Schneider, U.S. Dept. of Justice, Trial Atty., Torts Branch, San Francisco, Cal., for U.S.

## ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

ROTHSTEIN, Chief Judge.

THIS MATTER comes before the court on the parties' cross-motions for partial summary judgment on the extent of defendants' liability under 33 U.S.C. § 1321(f). Having reviewed the matter, together with all documents filed in support and in opposition, and being fully informed, the court finds and rules as follows:

### I. FACTUAL BACKGROUND

This case arises out of the grounding of the M/V AOYAGI MARU at Akun Island, Alaska, on December 10, 1988. After the ship was grounded, the United States Coast Guard blew up the vessel to burn off remaining fuel. It then filed this action to recover its response costs from defendants, Kyoei Kaiun Kaisha, Ltd. and Kitanippon Marine Company, Ltd., under the Clean Water Act ("CWA"), 33 U.S.C. § 1321, *et seq.*[1] Under the CWA, the owner of the vessel that discharges oil is responsible for the United States' response costs up to a limit of $150 per "gross ton" of the vessel. 33 U.S.C. § 1321(f).

A gross ton is generally defined as being equal to 100 cubic feet of a ship's enclosed internal space. A ship's gross tonnage is used to calculate costs such as custom duties and drydocking fees. Historically, a ship's gross tonnage has been measured in a variety of ways depending on which areas of a ship were included in the tonnage measurement. However, in 1969, an international tonnage convention was held to develop a uniform method for measuring gross tonnage. International Convention on Tonnage Measurement of Ships, 1969, T.I.A.S. No. 10490 ("Tonnage Convention" or "convention"). Both Japan and the United States have ratified this convention, which became effective on July 18, 1982. In 1986, the U.S. Congress passed legisla-

tion to begin implementing the Tonnage Convention. As is clear from this legislation, a number of exceptions have been made to application of the convention in the United States.

In these cross-motions for partial summary judgment, the parties dispute whether the convention tonnage measurement system or the Aoyagi Maru's certificate of nationality must be used for purposes of determining the extent of defendants' liability under the CWA.[2] The Aoyagi Maru's certificate of nationality, issued by the Japanese government, states that the gross tonnage of the ship is 2,036 tons. However, under the convention tonnage measurement system, the Aoyagi Maru's gross tonnage is 3,516 tons.

### II. DISCUSSION

#### A. *Standard of Review on Summary Judgment*

A grant of summary judgment is appropriate if it appears, after viewing the evidence in the light most favorable to the opposing party, that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *See, e.g., T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Association,* 809 F.2d 626, 630–631 (9th Cir. 1987); *Lew v. Kona Hospital,* 754 F.2d 1420, 1423 (9th Cir.1985). Summary judgment is not appropriate if "a result other than that proposed by the moving party is possible under the facts and applicable law." *See Aronsen v. Crown Zellerbach,* 662 F.2d 584, 591 (9th Cir.1981), *cert. denied,* 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983).

The parties here agree that there are no genuine issues of material fact presented in these cross-motions. They further agree that determination of the gross tonnage of the Aoyagi Maru is one for the court to make as a matter of law.

---

1. The United States also filed a number of common law claims against defendants. Those claims were dismissed in a March 6, 1991, 760 F.Supp. 174, order of this court. The parties also stipulated to a dismissal of the United States' claim for a civil penalty under 33 U.S.C. § 1321(b)(6).

2. The question of liability is not at issue in this motion and remains an open issue in this case.

B. *Laws Governing Tonnage Measurement*

Three legal instruments are relevant to determination of the appropriate tonnage measurement for purposes of applying the CWA: (1) the Tonnage Convention; (2) the 1986 U.S. implementing legislation; and (3) Coast Guard regulations governing application of the CWA.

1. The Tonnage Convention

The International Convention on Tonnage Measurement was executed in 1969, went into effect in 1982, was ratified by the U.S. Senate in October 1982 and went into effect in the United States in February 1983. Although both the Tonnage Convention and the 1986 U.S. legislation implementing it both state that ships built after a specific date are to have convention tonnage measurement certificates, neither directly addresses the scope of the convention tonnage measurement system's use. The Tonnage Convention states only that each contracting nation is to "give effect" to the Tonnage Convention provisions, leaving each contracting nation to establish its own procedures for issuing international tonnage certificates. *See* Tonnage Convention, art. I. The driving force behind the conference at which the Tonnage Convention was passed, however, was the need to establish some uniformity in tonnage measurement in order to uniformly apply other international regulations that were dependent on a vessel's tonnage.

2. The 1986 Implementing Legislation

The 1986 U.S. legislation was designed to be a first step toward implementing the Tonnage Convention. It was to set out both an administrative system for measuring U.S. vessels according to the convention tonnage system as well as to determine which domestic laws were to be applied based on the convention tonnage measurement system. *See* H.R. 99–398, 46 U.S.C.App. at 582 (1981). The legislation did not purport to require immediate use of the convention tonnage measurement system for all purposes. For example, upon the request of a vessel owner, a vessel may receive a tonnage measurement based on the old regulatory system for the purpose of the application of certain specified statutes. 46 U.S.C. § 14305(a). In addition, the legislation delegates to the Secretary of Transportation the authority to designate which domestic statutes should be applied using a vessel's convention tonnage measurement. 46 U.S.C. § 14302(c)(2).

3. The Clean Water Act Regulations

The CWA regulations governing the extent of liability have consistently referred to a vessel's certificate of registry for the applicable tonnage measurement. 33 C.F.R. § 130.3(b). Section 130.3(b) states: "The gross tonnage of a vessel is the tonnage indicated in the vessel's Certificate of Registry or, in the absence thereof, other marine documents acceptable to the Coast Guard." These regulations were initially passed by the Federal Maritime Commission in the late 1970s and re-enacted by the Coast Guard in 1983.

C. *Determination of Tonnage Measurement Under the Clean Water Act*

The parties claim that the interaction of the Tonnage Convention, the 1986 implementing legislation and the Coast Guard regulations determines which tonnage measurement system should be used to determine the meaning of the term "gross ton" in the CWA for the purposes of assessing the extent of defendants' liability in this case. The defendants contend that the Coast Guard regulations clearly require use of the tonnage specified on the certificate of registry and that this result is consistent with the 1986 implementing legislation and the Tonnage Convention. The government argues that: (1) the Coast Guard regulations are best interpreted as requiring use of the convention tonnage measurement; (2) the 1986 implementing legislation does not apply to foreign-flagged ships, and that therefore the convention tonnage measurement applies; (3) that even if the 1986 implementing legislation does apply to foreign-flagged ships, the liability provisions of the Clean Water Act are among the statutes to which the

convention tonnage measurement applies; and (4) that the United States' obligation to give effect to the Tonnage Convention warrants use of the convention tonnage measurement in this case.

Only the Coast Guard regulations directly address the measurement system to be used for application of the CWA. Those regulations state, unequivocally, that a vessel's tonnage, for purposes of applying the CWA, is the tonnage specified on the vessel's certificate of registry. Moreover, these Coast Guard regulations are used by vessel owners to obtain insurance, which allows them to demonstrate financial responsibility for liability under the CWA. Defendants argue that because vessel owners rely on the measurement system specified in the Coast Guard regulations to obtain insurance, it would be inequitable to permit the government to apply a different measurement system for purposes of assessing liability after the owners have obtained insurance for the vessel. The Aoyagi Maru's Certificate of Nationality states that the vessel's tonnage is 2,036.[3]

The government, nonetheless, suggests two alternate interpretations of the CWA regulations. The government first argues that the phrase "or other marine documents" refers to the convention tonnage certificate. It next argues that § 130.3(c) rather than § 130.3(b) governs this case. Section 130.3(c) states that

if a vessel has more than one gross tonnage, the higher tonnage applies unless the vessel operator states in writing that the vessel never operates in any United States waters under such higher tonnage.

The government's arguments are without merit. First, it is clear from the language of § 130.3(b) that other marine documents are to be used only when the vessel has no certificate of registry. That is not the case here. The Aoyagi Maru's certificate of registry specifies its tonnage at 2,036 tons. Second, § 130.3(c) does not refer to vessels that have two tonnages

based on different tonnage measurement systems. Rather, it refers to vessels with multiple deck structures that permit them to operate at either of two tonnages under the *same tonnage measurement system* depending on the configuration of the ship at any given time. Usually such vessels have a tonnage measurement that includes the uppermost deck and one that does not, depending upon whether the uppermost deck is being used to carry cargo. *See* 46 C.F.R. § 69.151–.177 (1988); International Maritime Organization Marine Safety Committee, *Interpretation of Terms in International Convention on Tonnage Measurement of Ships*, Appendix I (1982).

The government next argues that these Coast Guard regulations are in conflict with the specific intent of Congress in enacting the 1986 legislation implementing the Tonnage Convention. The defendants, on the other hand, argue that the regulations are not in conflict with the 1986 legislation because the Secretary of Transportation has not specified the CWA as a domestic law that is to be applied using a vessel's convention tonnage measurement as required by 46 U.S.C. § 14302(c)(2). Section 14302(c) states in relevant part:

(c) Unless otherwise provided by law, the measurement of a vessel under this chapter applies to a law of the United States whose applicability depends on a vessel's tonnage, if that law—

. . . . .

(2) is in effect before July 19, 1994, is not enumerated in section 14305 of this title, and is identified by the Secretary by regulation as a law to which this chapter applies.

Thus, the Secretary of Transportation must identify all statutes to which the convention tonnage measurement system applies unless that statute is already identified in § 14305 as a law to which the convention tonnage measurement system does not apply.

---

**3.** The government does not contest defendants' contention that the Aoyagi Maru's certificate of nationality is essentially its certificate of registration within the meaning of 33 C.F.R. § 130.-3(b).

The government contends, however, that the 1986 implementing legislation specifying which statutes the convention tonnage measurement system applies to refers only to their application to U.S. vessels. The government concludes that because it was Congress' clear intent in the 1986 legislation to establish an optional registry tonnage measurement system only for domestic vessels, the Coast Guard regulations are in conflict with that clearly expressed intent and the Coast Guard's continued use of these regulations for purposes of applying the CWA to foreign-flagged vessels is not to be deferred to by this court as a permissible agency interpretation of the 1986 legislation. *See Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In support of this argument, the government refers the court to the 1986 legislation's legislative history as well as to its plain language.

The legislative history of 46 U.S.C. § 14101, *et seq.,* states that

This bill will implement the Convention in the United States by authorizing the Coast Guard to establish regulatory standards and requirements for vessel measurement which conform to the requirements of the Convention....

This legislation also addresses problems in the United States regulatory tonnage measurement system as it applies domestically....

This legislation seeks to establish a tonnage measurement system for U.S. vessels that will truly reflect the size of the vessels. It takes the first step toward the conversion of the Convention measurement system—which provides a genuine representation of the size of a vessel—as a basis for implementing tonnage-based laws domestically.... This legislation does not impose additional regulatory requirements on existing domestic vessels. It is designed, instead, to set in motion a process to determine the extent to which a conversion to the Convention measurement system domestically would result in additional regulatory requirements and costs to the domestic industry. This process should

permit informed judgements to be made at a future date about the proper timing and proper extent of converting more completely to the Convention system.

H.R. 99–398, 46 U.S.C.App. at 582 (1991). The government suggests that the legislative history's focus on domestic regulation of domestic vessels unambiguously reflects Congress' intent to permit use of a tonnage measurement other than the convention tonnage only for domestic vessels under specified domestic laws. The government also argues that the inclusion of §§ 14306, 14307, which separately address the circumstances for recognizing convention tonnage certificates of foreign-flagged vessels, in the 1986 implementing legislation illustrates Congress' specific intent to apply the convention tonnage to foreign-flagged vessels.

The government further argues that even if the 1986 legislation were to cover the application of specified domestic laws to foreign-flagged vessels, the liability provisions of the CWA are among the enumerated statutes in the 1986 legislation to which the convention tonnage measurements apply.

■ The government, however, is incorrect both in its assessment of the clarity with which Congress expressed its intent in the 1986 legislation and in its interpretation of application of the 1986 legislation to the CWA. First, while the legislative history of the 1986 legislation does indicate that the primary focus of the legislation is on application of domestic laws to domestic vessels and on converting the tonnage measurements of domestic vessels to the convention system, it is quite clear that the legislation is not meant to be comprehensive. At the very least, the 1986 legislation is silent as to the application of domestic laws to foreign-flagged vessels. While §§ 14306, 14307 do refer to U.S. recognition of international tonnage convention certificates of foreign-flagged vessels, these sections merely track provisions of the Tonnage Convention. However, the Tonnage Convention was designed to address tonnage measurement discrepancies

in the application of international regulations and fees. The Tonnage Convention does not on its terms address application of domestic laws to foreign vessels. *See* Tonnage Convention, arts. XI, XII. In addition, the 1986 legislation, on its face, speaks only of the use of different tonnage measurements for the application of domestic laws. It does not expressly limit application of those domestic laws to domestic vessels.

Furthermore, in the case of determining which tonnage measurement system to use in applying the CWA, it would not make sense to permit domestic vessels to use a different—usually lower—tonnage measurement than foreign vessels. The need to compensate the government for response costs associated with cleaning water pollution is present regardless of from what nation the contaminating vessel originates.

One clear objective of Congress was that the 1986 legislation was to be only an initial step in implementing the Tonnage Convention. This factor, combined with the statute's silence as to regulation of foreign-flagged vessels under domestic law, prohibits this court under a *Chevron* analysis from holding that the Coast Guard regulations are in direct conflict with the intent of Congress in passing the 1986 legislation. Congress' intent on this matter is ambiguous. The Coast Guard regulations specifying use of the certificate of registry tonnage are not.[4]

■ Second, the government's argument that the CWA is enumerated in § 14305(a)(14) of the 1986 legislation requires a labored and incomplete reading of that provision of the statute. Section 14305 enumerates certain domestic laws under which vessel operators *may request permission* to have their vessel's tonnage measured under the regulatory system rather than under the convention tonnage system. Subsection (a)(14) states that the optional regulatory measurement may be used for "provisions of law establishing the threshold tonnage levels at which evidence of financial responsibility must be demonstrated." The government argues that the 33 U.S.C. § 1321(f) is precisely such a provision of law establishing the threshold tonnage level at which evidence of financial responsibility must be demonstrated. The government concludes, however, that although the optional regulatory measurement may be used for determining the threshold level at which the CWA applies, the conventional tonnage measurement must be used to determine the extent of liability.

Section 14305(a)(14) clearly does not go this far. Even if the optional regulatory measurement could be used for determining the threshold liability for the application of the CWA, nothing in that section makes any reference to what tonnage measurement system must be used to determine the extent of a vessel operator's liability under the CWA. Again, the 1986 legislation is not intended to be comprehensive. That a certain statute is not specifically identified as one under which the optional regulatory measurement may be used does not mean that the convention tonnage must be used by default. Rather, whether the convention tonnage measurement must be used to determine the extent of liability would then be governed by § 14302(c)(2), which, again, requires the Secretary of Transportation to identify all laws under which the convention tonnage measurement is to be used. The Secretary has not identified the extent of liability under the CWA as one of those laws.

---

4. The government's argument that the Coast Guard regulations are not binding because they are merely re-enactments of earlier Federal Maritime Commission regulations promulgated in the late 1970s and re-enacted in 1983 is equally unpersuasive. The Coast Guard is responsible for establishing regulations both under the CWA and under the 1986 legislation implementing the Tonnage Convention. Certainly it would realize at some point that its regulations under one statute were in conflict with the regulations it was to impose under another. In addition, even though the CWA tonnage measurement regulation may be a mere re-enactment, the Coast Guard officers have continued to accept the certificate of registry figure without even beginning to inquire of vessel operators as to whether they have a tonnage measurement under the Tonnage Convention.

The government's final argument is that the plain language of the Tonnage Convention requires the use of the convention tonnage measurement to be used in the application of the CWA, or, in the very least, that this would be the result most in line with the intent of the contracting parties. According even to the legislative history of the 1986 U.S. implementing legislation, however, the Tonnage Convention was passed to effect uniformity of tonnage measurements for the purposes of other international regulations and fees. *See* H.R. 99–398, 46 U.S.C.App. at 522. Article I of the Tonnage Convention then instructs contracting parties to "give effect" to the convention, which suggests that, as defendants have characterized it, the convention is not self-executing and that the contracting parties anticipated that they would each draft legislation to implement the Convention. In addition to setting out the uniform measurement system, the remaining text of the convention speaks primarily in terms of each nation setting up a system by which to issue international tonnage certificates to vessels registered in that nation and in terms of what kinds of vessels are to be governed by the convention. The Tonnage Convention does not speak directly to use of the convention tonnage measurement system in the application of contracting nations' domestic laws. That appears to be within the province of each contracting nation under its obligation to "give effect" to the convention. However, that does not mean that the convention must be given effect with respect to the application of domestic laws if the government has not chosen to do so.

Thus, the government's arguments that either the 1986 implementing legislation or the Tonnage Convention require the use of the convention tonnage measurement to determine the extent of defendants' liability under the CWA are unpersuasive. They in no way overcome the clear language of the Coast Guard regulations in 33 C.F.R. § 130.3(b) specifying that the tonnage on the certificate of registry is the appropriate tonnage measurement to use. Furthermore, the court concurs with defendants' that inequities would arise from permitting the government to assess liability based on a higher tonnage measurement than that upon which its regulations permit vessel owners to obtain insurance under. Accordingly, if defendants' are found to be liable for the response costs of the government in cleaning up the contamination from the sinking of the Aoyagi Maru, they are liable under 33 U.S.C. § 1321(f) for $150 a gross ton for 2,036 gross tons, the tonnage reflected on the Aoyagi Maru's certificate of registry.

It is unfortunate that the government, through its own apparent inadvertence, must bear the response costs that are more properly borne by the polluter, in this case either Kyoei Kaiun Kaisha, Ltd., et al. or one of the third-party defendants. However, it is within the government's power to remedy this problem in future Clean Water Act cases. It is up to the Secretary of Transportation to coordinate implementation of the Tonnage Convention and application of the Coast Guard regulations establishing tonnage measurement for purposes of Clean Water Act financial responsibility. Only through attention to both instruments will the Secretary be able to fulfill the intent of the Tonnage Convention and to provide for adequate government compensation for cleaning up contamination in U.S. waters.

It is hereby ORDERED, ADJUDGED and DECREED that:

(1) the United States' motion for partial summary judgment is DENIED;

(2) defendants Kyoei Kaiun Kaisha, Ltd. *et al.*'s motion for partial summary judgment is GRANTED; and

(3) the extent of defendants' liability under the Clean Water Act, 33 U.S.C. § 1321(f) is to be based on a tonnage measurement of 2,036 tons.